PRISCILLA A. LAWHEAD, Claimant-Appellee *v.* UNITED AIRLINES, Employer-Appellant and PACIFIC INSURANCE COMPANY, LTD., Insurance Carrier-Appellant

NO. 5998

SEPTEMBER 12, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

This appeal arises from a decision by the Labor and Industrial Relations Appeals Board (Board) to affirm an order issued by the Director of Labor and Industrial Relations (Director). The Board below ordered appellants United Air Lines and Pacific Insurance Co. to pay a workers' compensation claim submitted by appellee Priscilla A. Lawhead. The claim asked for $26.35 in expenses due to the influenza Ms. Lawhead contracted outside Hawaii.

Appellants attack the Board's decision on two grounds. First, they contend that HRS § 386-6 (1976) failed to confer jurisdiction upon the Board to consider appellee's claim. Second, they contend that even if jurisdiction were present, influenza is not a compensable injury within the meaning of HRS § 386-3 (1976) [hereinafter, sections of HRS (1976) shall be referred to by section number only].

We affirm the Board's decision.

FACTS

Appellee's employer is appellant United Air Lines (United). United is a multi-state corporation that belongs to the airline industry. While its corporate headquarters is situated in Chicago, Illinois, United also has business headquarters called bases of operation at various locations throughout the United States, including a base at the Honolulu International Airport.

There are approximately 315 flight attendants employed

by United at its Honolulu base. The Honolulu base handles all employment matters concerning these 315 flight attendants.

In 1968, appellee was hired as a flight attendant by United. Forms with respect to the hiring process were completed in both California and Illinois. In 1971, appellee transferred to United's Honolulu base. Since then she has become a resident of Hawaii, and her employment status has been maintained in Hawaii.

During June 15-17, 1973, appellee was a flight attendant aboard United's Honolulu-Chicago-Honolulu flight, which goes first from Honolulu to Chicago with a stopover in Chicago before the return trip to Honolulu. For stopovers in Chicago, United provides accommodations for its flight attendants at the Palmer House Hotel. Appellee's fellow flight attendant during June 15-17 and, also, her roommate at the Palmer House was a Ms. Shirley Grigsby.

On June 15, appellee began a Honolulu-Chicago-Honolulu flight. She worked in the galley section of the aircraft where the temperature was extremely low. To keep warm, she wore a sweater and opened the oven doors.

For her stopover in Chicago, appellee stayed at the Palmer House during the night of June 16. Due to its defective heating and air-conditioning system which lacked temperature and on-off controls, the Palmer House had very dry air in its rooms. Flight attendants usually placed wet towels over room radiators in order to increase the amount of moisture in the air to prevent sore throats and colds. Appellee herself did this.

On June 17, appellee woke up with a dry and sore throat, later taking medication for her throat. After returning to Honolulu, she saw United's physician who diagnosed her illness as being influenza and prescribed medication for her. The charge for her office visits and medication amounted to $26.35.

Appellee thereafter filed a claim for workers' compensation which was approved by the Director. That approval was appealed by appellants to the Board which, in a de novo hearing pursuant to § 386-87, affirmed the Director's action. Appellants then brought this appeal.

## DISCUSSION

Appellants raise two issues: first, whether the Board had *jurisdiction* under § 386-6 to hear appellee's claim; and second, whether appellee's claim was *compensable* under § 386-3.

We answer both issues in the affirmative.

### Jurisdiction

In the proceeding below, the Board held that it had jurisdiction to hear appellee's claim under either ¶ 2 or ¶ 3 of § 386-6. We affirm the finding of jurisdiction on the basis of ¶ 2.

Section 386-6 provides:

Territorial applicability. The provisions of this chapter shall be applicable to all work injuries sustained by employees within the territorial boundaries of the State.

If an employee who has been hired in the State suffers work injury, he shall be entitled to compensation under this chapter even though the injury was sustained without the State. The right to compensation shall exclude all other liability of the employer for damages as provided in section 386-5. All contracts of hire of employees made within the State shall be deemed to include an agreement to that effect.

If an employee who has been hired without the State is injured while engaged in his employer's business, and is entitled to compensation for the injury under the law of the state or territory where he was hired, he shall be entitled to enforce against his employer his rights in this State if his rights are such that they can reasonably be determined and dealt with by the director of labor and industrial relations, the appellate board; and the court in this State.

As ¶ 1 of § 386-6 makes clear, the Workers' Compensation Law applies "to all work injuries sustained by employees within the territorial boundaries of the State." If appellee had suffered a work injury in Hawaii, then the only inquiry — one

easily answered — would have been whether she was an *employee*.

But the alleged work injury undisputedly occurred "without the State" or outside the territorial boundaries of Hawaii. Therefore, either ¶ 2 or ¶ 3 of § 386-6 had to apply before the Board had jurisdiction to hear appellee's claim.[1]

Paragraph 2 provides that

> [i]f an *employee* who has been *hired in the State* suffers work injury, [s]he shall be entitled to compensation . . . even though the injury was sustained without the State.

(Emphasis added). Since appellee was admittedly an employee of appellant United Air Lines, we must determine whether she was "hired in the State."

The term "hired in the State" suggests different definitions. The definition that appellants support, which the Board below rejected, is that "the contract of hire is created in the State." This definition would require an employee to be under a contract of hire created in Hawaii before she could recover for out-of-state injuries. The acceptance of this definition would place Hawaii in the group of states which adheres to the "contract theory" of workmen's compensation for out-of-state injuries. By this theory, the place where the employment contract was made becomes decisive.

The contract theory holds that

> [t]he compensation law of the state of contract . . . [becomes] a part of that contract, and therefore applie[s] no matter where the injury occur[s].

4 A. Larson, Workmen's Compensation § 87.31 (1978). For example, suppose a woman employed under a contract

---

[1] Although ¶ 2 contains and ¶ 3 lacks the phrase, "the injury was sustained without the State," the legislative history and the statutory predecessors of § 386-6 make it clear that both ¶¶ 2 and 3 apply only to injuries suffered outside Hawaii. *Compare* § 386-6 *with* RLH § 97-8 (1955)(which is entitled "Injuries without the Territory" and which only consists of two paragraphs virtually identical to ¶¶ 2,3 of § 386-6) *and* RLH § 3646 (1925)(same, except that it is entitled "Injuries outside the Territory"). *See generally* 1963 Hawaii House Journal 823; 1963 Hawaii Senate Journal 789-90.

created in Hawaii had thereafter been permanently transferred to New York, losing all contact with Hawaii. Under the contract theory, if she suffered an injury years later in New York or any other state besides Hawaii, she would then be entitled to compensation under ¶ 2 of § 386-6. The contract theory, therefore, looks not to the present but to the past. The important factor is not whether the employee now has some substantial connection with Hawaii but whether the employee's contract of hire — deliberately or accidentally — was created in Hawaii.

By the example given above and for other reasons, including those given below, the contract theory leads to unsatisfactory results:

> The confusion and absurdities which would arise under [the contract theory] are readily apparent: In cases involving a position such as that of traveling salesman for a company operating in several states, the administration and effectiveness of [workmen's compensation] acts might be seriously impeded. Liability for injuries, except those incurred in the course of employment within the state could be escaped by the simple means of placing the machinery of hiring outside of the state. Where a workman, continuously employed, had been assigned to duties in several states, it might be necessary to examine the nature of the contract and its modifications made in every state in which he had worked. The facts of each new assignment of duties would have to be studied to determine if at any time there was a new hiring, or if the changes in duties involved merely unsubstantial modifications of the original contract of hire . . . . [Furthermore, many injured] employees may never reside or [even] work in [the] state [where the contract was made].

*Fay v. Industrial Commission,* 114 P.2d 508, 510-11 (Utah 1941).

We believe that a better definition of "hired in the State" is that "an employment relationship exists in the State." This definition follows the "employment relationship theory," which has been hailed as "the most relevant to [workmen's] compensation . . . and the least artificial." 4 A. Larson,

*supra*, § 87.41; *see Fay v. Industrial Commission, supra* at 510-11.

Other courts have also provided a broad construction of "hired in the State." For example, the Utah Supreme Court has

> interpret[ed] the phrase "hired in this state" to mean the status of being hired, or in other words, the maintenance of the status of employer and employee in this state . . . .

*Id.* at 510 (some commas omitted).[2]

In addition, the Texas Supreme Court has commented that

> [t]he phrase, "who has been hired in this State," has no reference to the place where the contract of hiring took place. The test is: What was the status of the employee at the time of injury with regard to being a Texas employee? If, at such time, he occupied the status of a Texas employee, he is entitled to protection under our Compensation Statutes, even though he was working out of the State.

*Southern Underwriters v. Gallagher*, 135 Tex. 41, 45, 136 S.W.2d 590, 592 (1940); *accord, Renner v. Liberty Mutual Insurance Co.*, 516 S.W. 2d 239, 241 (Tex. Civ. App. 1974).

We hold that the phrase "hired in the State" as used in ¶ 2 of § 386-6 incorporates the employment relationship test. To be covered under ¶ 2, an employee must have an employment relationship existing in Hawaii at the time of her injury. *See generally* 4 A. Larson, *supra*, §§ 87.40-44.

Here, appellee was maintaining her employment status in Hawaii at the time her out-of-state injury occurred: she was a

---

[2] The Workmen's Compensation Act construed in Fay v. Commission, 114 P.2d 508 (Utah 1941), was later amended to provide "who has been hired *or is regularly employed* in this state" (amending language emphasized). *Compare ibid. with* Allen v. Industrial Commission, 172 P.2d 669 (Utah 1946). The Utah Supreme Court then construed that amended phrase to incorporate both contract and employment relationship theories: "hired . . . in this state" to mean the state where the contract of employment was made, and "regularly employed in this state" to mean that the employment was located in the state. *See ibid.* at 673; *cf.* State Compensation Ins. Fund v. Howington, 298 P.2d 963 (Colo. 1956).

flight attendant assigned to United's Honolulu base; although she spent much time away from Hawaii due to the nature of her work, her principal place of employment was situated in Hawaii; and she was a bona fide resident of Hawaii.

We would be remiss if we denied the protection of our Workers' Compensation Law to a Hawaii employee.

Having found jurisdiction on the basis of ¶ 2 of § 386-6, we find it unnecessary to examine ¶ 3.

### Compensability

The Board below concluded that appellee's claim was compensable pursuant to § 386-3. We affirm.

Appellee argues that influenza is an "injury" within the meaning of § 386-3 and that she contracted influenza as a result of her employment. Appellants, of course, disagree with both arguments.

Compensable injuries are defined by § 386-3 which states:

> Injuries covered. If an employee suffers personal injury either by accident arising out of and in the course of the employment or by disease proximately caused by or resulting from the nature of the employment, his employer or the special compensation fund shall pay compensation to the employee or his dependents as hereinafter provided.
>
> .   .   .   .

In view of the broad scope of this statute, we hold that a disease or illness such as influenza is an injury within the meaning of § 386-3.

As to whether appellee contracted influenza as a result of her employment, and thus, suffered a compensable injury, this court must consider the burden imposed upon the employer by § 386-85:

> Presumptions. In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary:
>
> (1) That the claim is for a work covered injury;
>
> .   .   .   .

Once appellee made her claim, it was incumbent upon United to place substantial evidence to the contrary in the record.

In workmen's compensation cases, the employer carries a heavy burden. This court has consistently construed § 386-85 liberally in accordance with the humanitarian purposes of workmen's compensation. The "substantial evidence" requirement in § 386-85 imposes on the employer both the burden of going forward with the evidence and the burden of ultimate persuasion. *E.g.*, *DeFries v. Ass'n of Owners*, 57 Haw. 296, 304, 555 P.2d 855, 860 (1976); *Akamine v. Hawaiian Packing*, 53 Haw. 406, 408, 495 P.2d 1164, 1166 (1972). We have held that "substantial evidence" means a high quantum of evidence, *DeFries v. Ass'n of Owners, supra* at 304, 555 P.2d at 860, and that "[i]f the employer fails to [present] substantial evidence to the contrary, the presumption mandates that the claimant must prevail." *Akamine v. Hawaiian Packing, supra* at 406, 495 P.2d at 1166.

The presumption in favor of the employee is consistent with the federal courts' interpretation of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. (1970), which contains a provision similar to § 386-85.[3] In *De Victoria v. H & K Contractors*, 56 Haw. 552, 561, 545 P.2d 692, 699 (1976), this court quoted with approval the following language from *Wheatley v. Adler*, 407 F.2d 307, 312 (D.C. Cir. 1968) (footnote omitted):

> There is . . . a presumption of compensability grounded in the "humanitarian nature" of the Act. Moreover, . . . the fact that an injury or death occurs "in the course of employment strengthens the presumption that it arises out of the employment, with doubts resolved in the claimant's favor."

---

[3] 33 U.S.C. § 920(a)(1970) states:

Presumptions. In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary—

(a) That the claim comes within the provisions of this chapter.

In addition to the presumption of compensability, "the broad humanitarian purpose of the workers' compensation statute *read as a whole* requires that all reasonable doubts be resolved in favor of the claimant," *DeFries v. Ass'n of Owners, supra* at 304, 555 P.2d at 860 (emphasis in original), for diseases arising from the nature of the employment are among the costs of production which industry must bear. *See Akamine v. Hawaiian Packing, supra* at 409, 495 P.2d at 1166. Thus, an injury is compensable if it reasonably appears to have resulted from the working conditions.

United merely argues that since the particular method of transmission of influenza has not been medically verified in the instant case, influenza cannot be an employment-related injury. This argument, however, ignores the statutory presumption and is inconsistent with the principle that the humanitarian purpose of workmen's compensation requires that all reasonable doubts be resolved in the claimant's favor. In a case where the cause of the disease is uncertain, these factors are crucial.

This court found an employment-related injury to exist where schizophrenia with suicidal tendencies developed from anxiety depression "attributable to the pressures of work." *Royal State Nat'l Ins. Co. v. Labor Board,* 53 Haw. 32, 37, 487 P.2d 278, 281 (1971). Cardiovascular diseases and heart attacks also have been held to be compensable, despite the contention by some doctors that such diseases and attacks normally are not caused by work. *See Akamine v. Hawaiian Packing, supra* at 410-12, 495 P.2d at 1167-68; *S & W Crane Service v. Berard,* 53 Haw. 161, 489 P.2d 419 (1971).

Similarly, the U. S. Court of Appeals for the District of Columbia has recognized:

> Rebutting evidence may be hard to develop, given the limits of medical ability to reconstruct why "something goes wrong within the human frame." But that is precisely why the presumption was inserted by Congress. It signals and reflects a strong legislative policy favoring awards in arguable cases. We have frequently pointed out that since the statute "should be construed liberally" in favor of employees and their dependents, it is "in their

favor [that] doubts, including the factual, are to be resolved.''

*Wheatley v. Adler, supra* at 313-14 (footnote omitted, brackets in original).

United also contends that the claim should be denied because appellee failed to show that she was exposed to an increased risk attributable to work. Long ago, however, nearly identical arguments were rejected as legally irrelevant by this court. *See Akamine v. Hawaiian Packing, supra* at 410-14, 495 P.2d at 1167-69; *Royal State Nat'l Ins. Co. v. Labor Board, supra* at 39, 487 P.2d at 282. The relevant point is not whether a claimant would more likely have suffered an injury at work than elsewhere but whether her injury occurring in the course of employment was work related.

The undisputed evidence supports the Board's conclusion that the claim was compensable. Appellee, in the course of her duties, worked in an aircraft's galley where it was extremely cold, and she was housed by United in a hotel with a faulty heating and air-conditioning system; promptly thereafter, she developed a dry and sore throat. The development of her illness during the Chicago-Honolulu-Chicago flight was verified by Shirley Grigsby, appellee's fellow flight attendant and Palmer House roommate. Appellee sought medical treatment upon her return to Honolulu, and her condition was diagnosed as influenza by United's physician. Thus, there was evidence that she suffered from an illness proximately caused by or resulting from the nature of her employment. Since United failed to present substantial evidence to rebut the presumption that her claim was for a covered work injury, appellee must prevail.

The judgment of the Board is affirmed.

*Roland Q. F. Thom (Cades Schutte Fleming & Wright* of counsel) for Employer-Appellant and Insurance Carrier-Appellant.

*James King (Bouslog & Symonds* of counsel) and *Seth D. Rosen* for Claimant-Appellee.